IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| REYCE JANON COOK | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § 2:18-CV-077-Z-BR |
| | § |
| CHARLES R. HORSLEY, *et al.*, | § |
| | § |
| Defendants. | § |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO
GRANT DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' First Amended Motion for Summary Judgment on Qualified Immunity Only (the "Motion") filed by Defendants Jacob Williams, Joe Milbern, Matthew T. Seymour, Jacie White, and Charles R. Horsley (collectively, "Defendants"), as well as Defendants' brief and supporting appendix. (ECF 155, 156, 157). Plaintiff filed a Response and a Brief in Support of Response to Defendants' Amended Motion (ECF 161, 162), to which Defendants filed a Reply. (ECF 163). For the reasons stated herein, the Magistrate Judge recommends that Defendants' Amended Motion be GRANTED.

### I. BACKGROUND

Plaintiff Reyce Janon Cook ("Cook" or "Plaintiff") was incarcerated at TDCJ's Neal Unit when, on December 22, 2017, prison officials conducted a unit-wide shakedown and strip searches, allegedly for the purpose of conducting training exercises. (ECF 162 at 1). Cook alleges that on that day, Defendant Williams entered the Neal Unit's P-wing with "other prison officials and approximately 40 to 50 cadets in training." (*Id.* at 3). Cook asserts that "there was no security concern or prison disturbance that instigated the shakedown." (*Id.* at 3). Cook states that after entering P-wing, Defendant Williams "informed the inmates that they would be conducting a unit-

1

wide shakedown and strip searches as a training exercise." Williams then left the unit, and placed Sergeant White in charge. (*Id.*). Cook states that inmates were lined up near the bathrooms for their strip search, where they were visible from anywhere in the dorm unit, and in a location recorded by prison surveillance cameras. (*Id.*). Defendants assert that the bathroom area in which the inmates were searched was separated from the rest of the dayroom by a "waist-high physical barrier to preserve the inmates' modesty." (ECF 156 at 6 (internal citations omitted)). Defendants assert that this waist-high barrier around the "shower area ensures that, even if someone were to glance over at the shower area, they would need to make an effort to actually see nudity." (*Id.* at 8). Cook, however, asserts that the strip search at issue occurred outside of the shower area, "in an area that was visible from the rest of the dorm." (ECF 162 at 6-7).

Cook states that he "was instructed to remove his clothing and prison officials conducted a body cavity search, which involved, among other things, lifting his own testicles and spreading his own buttocks while in a public area." (*Id.* at 3). Cook asserts that female cadets were present in the dayroom, observing the strip searches, and were conversing with the male cadets who were actually conducting the searches. (*Id.*). Cook states that, several times, he "made direct eye contact with the female cadets while he was fully nude," (*Id.*), and that "[n]o attempt was made to make this search private." (ECF 109 at 8). Cook further states that prison officials directed the cadets in charge of searching the area "to bring potential contraband items to a table located adjacent to the ongoing strip searches," which "required additional female cadets to approach and observe the strip searches as they were occurring." (*Id.*). In Cook's Amended Complaint (ECF 109), he claimed that Defendants Horsley, Milburn, and Seymour "[k]new about illegal search and allowed it to take place and "[a]pproved search." (*Id.* at 3). He further claimed that Defendant Williams "[p]articipated in the constitutional violation" and "[c]onducted search." (*Id.*). Finally, he claimed

2

that Defendant White "[p]articipated in search (constitutional violation)" and "supervised search." (*Id.*).

Cook filed this lawsuit in 2018, alleging a violation of his Fourth Amendment rights. Defendants now move for summary judgment on the issue of qualified immunity. Cook responded to the Motion and disputes Defendants' claim.

## II.   SUMMARY JUDGMENT STANDARD

### A.   TRADITIONAL SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in

briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

B. **QUALIFIED IMMUNITY DEFENSE**

In the instant Motion, Defendants move for summary judgment on the affirmative defense of qualified immunity. (ECF 155). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law . . . we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* To trigger

the qualified immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin*, the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin*, 48 F.4th at 392. In this case, however, Cook does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239, at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Each Defendant's conduct must be analyzed separately to determine if he is entitled to qualified immunity.

### III. PLAINTIFF'S FOURTH AMENDMENT CLAIM

#### A. WHETHER A CONSTITUTIONAL VIOLATION OCCURRED

In analyzing an alleged Fourth Amendment violation, courts must first determine whether the prison had a legitimate need to conduct the search at issue. *Bell v. Wolfish*, 441 U.S. 520, 546

(1979). If a legitimate need to conduct the search existed, the court must then determine whether the search was "reasonable under all facts and circumstances in which [it was] performed." *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994). This standard of reasonableness requires courts to strike a balance "in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner." *Watt v. City of Richardson Police Dep't*, 849 F.2d 195, 196 (5th Cir. 1988). Courts must consider the scope of the intrusion, the manner in which the search was conducted, the justification for the search, and the place in which the search was conducted. *See Watt v. City of Richardson Police Dep't*, 849 F.2d 195, 196-97 (5th Cir. 1988). Even where "the privacy of the prisoners" is compromised, a search may still be constitutionally reasonable. *Elliott*, 38 F.3d at 191-92. Courts are "required . . . to accord prison administrators great deference and flexibility in carrying out their responsibilities to the public and to the inmates under their control, including deference to the authorities' determination of the 'reasonableness of the scope, the manner, the place and the justification for a particular policy.'" *Id.* at 191.

The Fifth Circuit has held that "no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of female guards is required to protect against a legitimate government interest such as maintaining security at a correctional facility." *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) (citing *Barnett v. Collins*, 940 F.2d 1530 (5th Cir. 1991) (table) (unpublished) (upholding use of female guards in guard towers giving full view of male inmates taking showers); *see also Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002) (holding that security concerns justified the practice of allowing female guards to monitor male inmates in bathrooms and showers); *West v. Parker*, 68 F.3d 466 (5th Cir. 1995) (holding that where a female officer had "unrestricted access" to a male prisoner's dormitory and bathroom area, dismissal of

the claim was warranted because the plaintiff made no showing that the guard's presence was unnecessary to maintain security).

The Fifth Circuit noted that "[t]his court has held that strip searches carried out in nonsecluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional." *Tasby v. Lynaugh*, 123 F. App'x 614 (5th Cir. 2005) (citing *Letcher*, 968 F.2d at 510). So long as "the presence of the female guards is required to protect a legitimate government interest in maintaining security at the prison," the practice of conducting a strip search in the presence of female guards is not unconstitutional. *Johnson v. Rupert*, 647 F. App'x 407, 408 (5th Cir. 2016); *Elliott*, 38 F.3d at 191-92 (holding that mass strip searches in front of female employees were justified due to an increased incidence of prison murders, suicides, stabbings, and cuttings); *Letcher*, 968 F.2d at 510 (holding that there was a sufficient need for security provided by female guards during strip searches of male inmates during a lock-down following a "food throwing" "disturbance involving 18 or 19 inmates [which] had just taken place"); *Whitaker v. Kempt*, No. 6:19cv349, 2021 WL 2388978, at *7 (E.D. Tex. May 20, 2021) ("Because [plaintiff] merely alleges an incidental viewing by a member of the opposite sex during a strip search, he fails to state a claim upon which relief can be granted."), *report and recommendation adopted*, No. 6:19-cv-349, 2021 WL 2376364 (E.D. Tex. June 10, 2021); *Moore v. Foley*, No. 2:18-CV-154-Z-BR, 2021 WL 2416971, at *1 (N.D. Tex. June 14, 2021) ("The Fifth Circuit has also consistently held that the practice of conducting strip searches in the presence of female officers is not unconstitutional.").

Here, Cook "makes no showing that these searches were not conducted for a legitimate, security-based reason, nor that the presence of the female officers in the vicinity was not necessary for the maintenance of security or other legitimate reasons." *Hughes v. Bryant*, No. 9:09cv90, 2010

WL 148194, at *3 (E.D. Tex. Jan. 11, 2010). Defendants state that the cadets helped to conduct searches during the shakedown and "[t]he extra manpower ensured that the searches were more thorough." (ECF 157 at 23). Plaintiff contends that the searches were conducted for the sole purpose of training the new cadets, and that this training is not a legitimate penological purpose. (ECF 162 at 6). Even if the purpose of the shakedown and strip searches was to train the new cadets, it is clear that the shakedown and strip searches *also* served the valid purpose of maintaining security at the prison and controlling the flow of contraband. *See Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017) ("Controlling the flow of contraband and ensuring institutional security are legitimate penological objectives."). Therefore, the record supports that the shakedown and strip search were conducted for the legitimate purpose of controlling the flow of contraband and ensuring institutional security, as well as for the legitimate purpose of allowing the training cadets to observe and assist in the shakedown.

Looking next to the scope of the intrusion, the manner in which the search was conducted, the justification for the search, and the place in which the search was conducted, it is clear that the search at issue was reasonable. *See Watt v. City of Richardson Police Dep't*, 849 F.2d 195, 196-97 (5th Cir. 1988). The Fifth Circuit has repeatedly upheld strip searches as "constitutional even when they were conducted in public areas in the presence of non-essential personnel." *Johnson v. Rupert*, 647 F. App'x 407, 408 (5th Cir. 2016); *see Elliott*, 38 F.3d at 190-92. Courts must afford deference to prison administrators in carrying out their objectives—including maintaining a secure prison facility; proving reasonableness is therefore a "light burden." *United States v. Lilly*, 576 F.2d 1240, 1244-45 (5th Cir. 1978).

As discussed above, the evidence in the record establishes that the presence of the female cadets furthered one or more legitimate government interests: carrying out a swift and

comprehensive shakedown of the prison and training new cadets. These two legitimate purposes can coexist. The search was not carried out by a female correctional officer—female training cadets were merely in the same room where the searches were being conducted—and "[n]o case has held that such incidental viewing of inmates is unconstitutional." *Johnson v. Rupert*, No. 6:11cv446, 2014 WL 6969202, at *15 (E.D. Tex. Dec. 9, 2014). 2014 U.S. Dist. LEXIS 170872, at *30-31 (E.D. Tex. Aug. 20, 2014); *compare Petty v. Johnson*, 193 F.3d 518 (5th Cir. 1999) (rejecting challenge to a policy of allowing female guards to be present when male inmates are showering or otherwise naked) *with Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999) (holding that male prisoner-plaintiff's claim was not frivolous where he alleged that a female officer conducted a strip search in the absence of emergency or extraordinary circumstances, and where male guards may have been available to conduct the searches).

As in *Elliott*, where the court rejected the argument that officers improperly "overlooked alternative methods and places to conduct the search that would have been less intrusive on [plaintiff's] privacy rights," so is the situation here. 38 F.3d at 191-92. In the context of shakedowns, it is appropriate for officers to conduct strip searches in the most time-efficient place and manner possible, even when it results in a search being conducted in a large, open room. *Id.* Although Plaintiff contends that strip searches have been conducted in other, more private areas in the past, this lengthier process would "have defeated the purpose of the swift institution-wide shakedown, by allowing the inmates a greater opportunity to hide or dispose of weapons and contraband . . . ." *Id.* at 192; *see also Hudson v. Palmer*, 468 U.S. 517, 529 (1984) (noting that in the context of strip searches, there is a risk that "inmates would adapt to any pattern or loopholes they discovered in the search protocol and then undermine the security of the institution). Although there is a factual dispute as to where the search occurred—Defendants contend that the searches

were conducted behind the shower half-wall, which would have blocked bystanders' view of the searches from the waist down, while Plaintiff asserts that the searches were conducted outside of the shower area in full view of everyone in the room—the Court does not find that dispute to be one involving a material fact. Even assuming the search was conducted in an open area, the Fifth Circuit has established that in the context of shakedowns, it is appropriate for a strip search to be conducted in the most time-efficient manner possible, which may be in an open room. *Elliott*, 38 F.3d 188. In sum, Defendants have established that the prison had a legitimate need to conduct the search, and that the search was reasonable under all the facts and circumstances in which it was performed. Given the context of a shakedown, it follows that, even when viewing the facts in the light most favorable to the Plaintiff, he has failed to establish that the search was unreasonable, when considering the manner, scope, justification for, and place of the strip search.

Finally, to the extent Plaintiff claims that the strip search was recorded, he has failed to establish that this rendered the search unreasonable under the Fourth Amendment. (*See* ECF 162 at 3). Even if the searches were recorded, as Plaintiff states,[1] the Fifth Circuit has held that "constant surveillance, even cross-sex surveillance, of prisoners is constitutional because it is reasonably related to the penological interest of maintaining security." *Oliver v. Scott*, 276 F.3d 736, 745-46 (5th Cir. 2014); *see also Garrett v. Thaler*, 560 F. App'x 375 (5th Cir. 2014) (holding that "the placement of recording cameras in the restroom, shower, and dressing quarters" did not violate the plaintiff's Fourth Amendment rights). Therefore, the fact that the searches may have been conducted in an area recorded by surveillance cameras would not render the searches unreasonable.

---

[1] Defendants state that "strip searches are not recorded by TDCJ and the shower area in which the strip searches were conducted . . . does not have surveillance footage." (ECF 156 at 16). Again, while a factual dispute exists, it is not material.

## B. WHETHER THE RIGHT WAS CLEARLY ESTABLISHED

To defeat summary judgment, Plaintiff must also show that the facts alleged constitute a violation of clearly established law. This requires that, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotations and alterations omitted). Plaintiff does not need to present a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The Fifth Circuit has emphasized the concept of "fair warning": although there may be "notable factual distinctions" between the instant matter and the precedent relied on to establish the right, the law can be clearly established "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004). In sum, a right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009); s*ee also McCreary v. Richardson*, 738 F.3d 651, 659 (5th Cir. 2013) (noting that "[g]iven the present case law in this circuit, we are not prepared to say that a reasonable officer would believe that a public strip search conducted by a male officer on a male offender in the presence of females after an equally public disruption was contrary to clearly established law").

Here, Plaintiff has failed to establish that Defendants' claimed conduct violated any clearly established constitutional or statutory rights of which a reasonable prison official would have been aware, as well as that the actions of the Defendants were objectively unreasonable in light of the law clearly established in December of 2017. "The law in effect [in 2010], of which a reasonable prison official would have been aware, provided that it was improper for a female correctional officer to carry out a strip search of a male prisoner, but that strip searches could be carried out

11

with female officers in the vicinity if the presence of the female guards is required to protect a legitimate government interest such as maintaining security at a facility." *Johnson v. Rupert*, No. 6:11cv446, 2014 U.S. Dist. LEXIS 170872, at *37 (E.D. Tex. Aug. 20, 2014), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 169880 (E.D. Tex. Dec. 9, 2014). As of 2002, the Fifth Circuit "twice [had] found that security concerns can justify the strip search of a male inmate in front of female guards": during a lockdown following a food fight; and after a period of increased prison murders, suicides, stabbings, and cuttings, which prompted a shakedown. *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002). The Court cannot find any authority inconsistent with those holdings between 2002 and 2017, and courts have continued to uphold the practice of permitting strip searches of male inmates in front of female officers when justified by security concerns during that timeframe. *See McCreary v. Richardson*, 738 F.3d 651, 659 (5th Cir. 2013); *Johnson v. Rupert*, 647 F. App'x 407, 408 (5th Cir. 2016).

      Plaintiff contends that these cases establish that "only emergency circumstances can justify the strip search of a male inmate in front of female observers." (ECF 162 at 9). This, however, overstates the holdings in *Letcher*, 968 F.2d 508, and *Elliott*, 38 F.3d 188. In those cases, the Fifth Circuit held that the presence of female guards during a strip search is permissible when their presence is "required to protect against a legitimate government interest such as maintaining security at a correctional facility." *Letcher*, 968 F.2d at 510. Based on these holdings, "we are not prepared to say that a reasonable officer would believe that a public strip search conducted by a male officer on a male offender in the presence of females" in the context of a unit-wide shakedown "was contrary to clearly established law." *McCreary v. Richardson*, 738 F.3d 651, 659 (5th Cir. 2013). Even if Plaintiff is correct that he had a right to be free from a strip search conducted in a room where female cadets were present to assist in performing a unit-wide

12

shakedown, furthering the legitimate purpose of maintaining the security of the facility, this right was not clearly established at the time of the search.

    C. **WHETHER THE DEFENDANTS HAD PERSONAL INVOLVEMENT**

Assuming, *arguendo*, that there was a violation of Plaintiff's Fourth Amendment rights and that those rights were clearly established, the Court moves to personal involvement. "The Fifth Circuit has stated that in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong." *Lane v. Rupert*, No. 6:14cv14, 2014 WL 12835548, at *6 (E.D. Tex. 2014) (citing *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986)). Supervisory liability under § 1983 is appropriate "if (1) [the officer] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the officer] implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective and Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Further, a "supervisor may be held liable if the supervisor was personally involved in the constitutional deprivation or if there was otherwise 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Brantner v. Freestone Cnty. Sheriffs Off.*, No. 20-50528, 2022 WL 2077960, at *4 (5th Cir. June 9, 2022).

Although, in his amended complaint, Plaintiff asserted that Defendants Horsley, Milbern, and Seymour "[k]new about illegal search and allowed it to take place" and "[a]pproved search," (ECF 109 at 3), Plaintiff has not provided any evidence to support this assertion. "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Because Plaintiff has provided no evidence to support the assertion that the supervisory officials in this case were personally involved in the alleged search, or implemented

13

an unconstitutional policy that caused Plaintiff's injury, the Court finds that they are entitled to qualified immunity. Even if the instant strip search was unconstitutional, Plaintiff has not carried his burden of proof against the supervisory officials named in this case, Defendants Horsley, Milbern, and Seymour.

Cook further alleges that Defendants Williams and White were personally involved in and caused the asserted constitutional violation. Defendants assert that "it is undisputed that [Defendant Williams] was not present when Cook was strip searched." (ECF 163 at 4). Plaintiff confirmed that Defendant Williams left the room "once prison officials began" conducting the shakedown and strip searches. (ECF 162 at 3). Any causal link between the actions Plaintiff alleges Defendant Williams took—walking into the dayroom with other guards and the group of cadets to announce that there would be a shakedown and that strip searches would be conducted before leaving the room—and the harm Plaintiff alleges in this case—female cadets subsequently looking at Plaintiff while he was being strip searched—is too tenuous to satisfy the standard for personal involvement. (*See* ECF 162 at 3). Defendant Williams has submitted that he "never ordered nor directed female officers (including female cadets) to participate in or even to observe the strip searches of male inmates. To the extent any individual female officer or female cadet actively watched a strip search take place, it was neither at my direction nor had my approval." (ECF 157 at 22). Although courts are instructed to look to objective reasonableness rather than a Defendant's subjective intent, *McCreary v. Richardson*, 738 F.3d 651, 657 (5th Cir. 2013), Plaintiff has not demonstrated that Defendant Williams's conduct was objectively unreasonable. Although Plaintiff alleges (ECF 162 at 8) that Defendant Williams allowed strip searches of male inmates to take place in a room where female cadets were conducting a routine shakedown, this conduct cannot be said to be unreasonable, particularly where Williams stated

14

that any female officer or cadet observing the strip search would not have been doing so with his approval. (*See* ECF 157 at 22). Plaintiff has not demonstrated that Defendant Williams was personally involved in the violation or that there was a sufficient causal connection between his conduct and the alleged violation.

      Finally, Defendants acknowledge that it is "undisputed" that Defendant White was "in charge when the strip search at issue occurred," but that there is "no evidence that she caused the putative Fourth Amendment violation by directing the strip search to be conducted in such a manner as to render it unlawful." (ECF 163 at 4). Defendants state that, even if Defendant White "failed to intervene by, for example, ordering the female officers to leave the vicinity," this does not rise to the level of causation. (*Id.*). The Court agrees. A supervisor's "knowledge and acquiescence in their subordinates' [violation]" does not "[amount] to the supervisor's violating the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Defendant White stated that, on the day in question, she "never ordered nor directed female officers (including female cadets) to participate in or even to observe the strip searches of male inmates. To the extent any individual female officer or female cadet actively watched a strip search take place, it was neither at my direction nor had my approval." (ECF 157 at 6). White further stated that "[t]hroughout my time as Sergeant over the Training of Amarillo College, I always did my best to make sure that female cadets were not in the area where the male inmates were strip searched or, at least, were not positioned to see the male offender's nudity during the search." (*Id.* at 3). Further, Defendant White stated that "the entire purpose of these unit visits was to show the cadets how to do the job in accordance with TDCJ policy. It would defeat that purpose for either me to do something against policy or for me to direct someone else to violate policy." (*Id.*). Although Defendant White was present while the alleged violation occurred, Cook never alleges, and has provided no evidence,

that Defendant White herself observed the strip search, directed female cadets to observe the strip search, or approved their observation of a strip search. Therefore, any causal relationship between Defendant White's conduct in bringing female cadets into the room to participate in the shakedown while strip searches of male inmates were occurring and the alleged violation is too tenuous to satisfy the requisite level of personal involvement.

### IV. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Defendants in their Reply to Plaintiff's Response state that "to the extent Cook proffers his statement of belief as evidence that his belief is actually true, Defendants object." (ECF 163 at 2-3). Specifically, Defendants object to Plaintiff's statement that he believes "this training exercise was approved by Major Matthew Seymour, Assistant Warden Joe Milbern, and Warden Charles Horsley." (ECF 163 at 2; ECF 162-1 at 1-2). Defendants "also object to [Plaintiff's] statement that the searches 'were a violation of [his] Fourt Amendment rights." (*Id.*)

Federal Rule of Civil Procedure 56(c)(2) directs that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "Mere allegations are insufficient" to show that summary judgment is inappropriate. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir. 1987); *see also Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 139 (5th Cir. 1996); *cf. Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (holding, in the employment discrimination context, that the plaintiff's testimony offering her subjective belief that discrimination occurred "is simply insufficient to support a jury verdict in plaintiff's favor"). Verified pleadings "are competent evidence at summary judgment" where they are based on personal knowledge, set forth facts that would otherwise be admissible, and

show that affiant is competent to testify." *Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019); *Lodge Hall Music, Inc.*, 831 F.2d at 80.

To the extent Defendants object to Plaintiff's assertions that the training exercises were approved by the three supervisory officials—Defendants Seymour, Milbern, and Horsley—the Court recommends that this objection be granted. Plaintiff claims that these Defendants approved the search, stating only that: "I believe this training exercise was approved by Major Matthew Seymour, Assistant Warden Joe Milbern, and Warden Charles Horsley." (ECF 162-1 at 1-2). Plaintiff does not demonstrate personal knowledge of this approval, provide a foundation for his belief, or set forth facts that would be otherwise admissible to show the officials' approval of the searches. In other words, Plaintiff has provided only "unsubstantiated assertions," that are not competent summary judgment evidence. *Grimes*, 102 F.3d at 139.

Statements of fact in Plaintiff's affidavit, based on his own knowledge and made under penalty of perjury, are competent evidence to raise a fact issue for summary judgment. *Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 515 (5th Cir. 2001); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 n.12 (5th Cir. 1988). Unsubstantiated and subjective beliefs, opinions of fact, and conclusions of law are not competent summary judgment evidence, even when made under penalty of perjury. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Orthopedic & Sports Injury Clinic v. Wang Lab., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (stating that affidavits setting forth "ultimate or conclusory facts and conclusions of law" are not competent summary judgment evidence). To the extent Plaintiff relies on his statement that the searches 'were a violation of [his] Fourth Amendment rights" to establish that Defendants did in fact violate his rights, this statement is a legal conclusion and is not competent summary judgment evidence. (ECF

17

162-1 at 3). The undersigned therefore recommends that Defendants' objection be granted in that regard.

## RECOMMENDATION

For the reasons set forth above, the U.S. Magistrate Judge recommends that Defendants' Motion for Summary Judgment be GRANTED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED April 24, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).