IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| REYCE JANON COOK, | |
| Plaintiff, | |
| v. | 2:18-CV-77-Z-BR |
| CHARLES R. HORSLEY, *et al.*, | |
| Defendants. | |

**ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court are the findings, conclusions, and recommendation of the United States Magistrate Judge to dismiss the Complaint ("FCR") (ECF No. 170), filed April 24, 2024. Plaintiff filed an objection to the FCR ("Objection") (ECF No. 171) on May 8, 2024.

**BACKGROUND**

Plaintiff, an inmate at TDCJ's Neal Unit, was subject to a unit-wide strip search on December 22, 2017. ECF No. 162 at 5. On this date, he alleges that Defendant Williams entered the unit with "80 plus people present with 20 to 25 being females." ECF No. 109 at 8. Williams then left the unit and placed Sergeant White in charge. ECF No. 162 at 7. The inmates were lined up near the bathrooms, which rendered them visible across the unit and to surveillance cameras. *Id.* Defendants add that this bathroom area employed a "waist-high physical barrier to preserve the inmates' modesty." ECF No. 156 at 10 (internal citations omitted). Plaintiff contests that the strip search occurred outside the shower area. ECF No. 162 at 10–11.

Plaintiff details the search itself. He "was instructed to remove his clothing and prison officials conducted a body cavity search, which involved, among other things, lifting his own testicles and spreading his own buttocks while in a public area." *Id.* at 7. Female cadets were

present in the dayroom, per Plaintiff, and were conversing with the male cadets actually conducting the searches. *Id.* At several times, Plaintiff states that he "made direct eye contact with the female cadets while he was fully nude," *id.*, and that "[n]o attempt was made to make this search private," ECF No. 109 at 8. Concurrently, the prison officials directed the cadets "to bring potential contraband items to a table located adjacent to the ongoing strip searches," which "required additional female cadets to approach and observe the strip searches as they were occurring." ECF No. 162-1 at 2–3. Plaintiff alleges that Defendants Horsley, Milburn, and Seymour knew about the search, while Defendant Williams conducted the search. ECF No. 109 at 10.

Plaintiff filed this lawsuit in 2018, alleging a violation of his Fourth Amendment rights. Defendants moved for summary judgment, and the FCR recommended this Court to grant it. Plaintiff now objects on the grounds stated below.

### STANDARDS

This Court reviews *de novo* any part of the magistrate judge's decision that has been properly objected to. FED. R. CIV. P. 72(b)(3). Summary judgment is proper if the pleadings and pertinent discovery show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

Defendants assert qualified immunity in their motion for summary judgment. That doctrine "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023)

(citations omitted). Plaintiff must then establish that the officer violated his clearly established federal rights. *Id.* "This is a demanding standard . . . ." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016).

Qualified immunity thus alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Specifically, Plaintiff "must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* The Court then examines whether Plaintiff has shown a violation of a constitutional right under current law, and if a violation has occurred, it must determine whether the right in question was "clearly established" at the time of the alleged violation. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022).

ANALYSIS

Plaintiff objects that (1) the FCR's finding that general security concerns justify cross-gender strip searches is in error; (2) the FCR's finding that prison officials had no knowledge of the strip searches is in error; and (3) the FCR's finding that Defendants who had knowledge of the search avoid liability because they did not specifically instruct the female cadets to observe the strip search or approve of such observation is in error. ECF No. 171 at 4–9.

**I.      The strip search did not create a constitutional violation.**

"[N]o constitutional violation occurs when naked male inmates are viewed by female guards if the presence of female guards is required to protect against a legitimate government interest such as maintaining security at a correctional facility." *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) (citations omitted); *see Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017) ("We defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to

problems of jail security.") (internal marks omitted). Plaintiff argues (1) that the strip search was not "solely to provide security," meaning the female officers could not participate in the strip search; and (2) only an exigent circumstance, such as a group disturbance, could have justified the search. ECF No. 171 at 4–6. Neither argument avails here.

First, Plaintiff's authorities do not help the Court decide the constitutional question, which is whether this strip search violated the Fourth Amendment. *See id.* (accusing Defendants of violating TDCJ Administrative Directives); *see also Lewis*, 870 F.3d at 369 (explaining that "internal rules and regulations do not alone create federally-protected rights and a prison official's [alleged] failure to follow prison policies or regulations does not establish a violation of a constitutional right"). Plaintiff presents no further caselaw, nor is this Court aware of any, suggesting that these facts would constitute a Fourth Amendment violation.

Second, the strip search expressly served to maintain security at the prison. *See Lewis*, 870 F.3d at 368 ("Controlling the flow of contraband and ensuring institutional security are legitimate penological objectives."). Plaintiff's search was part of a prison-wide "shakedown." ECF No. 157 at 22. The prison routinely performs these only "twice a year, as well as on an as-needed basis." *Id.* at 23. On average, some Defendants conduct these twice per year. *See id.* (performing 28 shakedowns in 14 years). Defendants explain that "[t]he entire point of a unit shakedown is to thoroughly search the entire prison." *Id.* They "serve an important purpose in helping officers locate contraband." *Id.*; *see Lewis*, 870 F.3d at 369 (explaining that a similar policy created a "rebut[table] . . . reasonable justification for the strip and visual body cavity searches . . . .").

And the presence of female guards provided necessary security during the shakedown. Defendants explain that "[s]ometimes offenders are upset that their living areas are shaken down or that they are strip-searched." *Id.* Because shakedowns are "necessarily disruptive . . . . [t]he

extra manpower ensured that the searches were more thorough." *Id.* That is, "[w]ith so many cadets available to assist with the searches of the offenders' personal property, every piece of property was being inspected (sometimes multiple times)." *Id.* Hence, the presence of 20 additional female guards, in addition to 20 male guards, during the unit-wide shakedown served security by allowing the prison guards to thoroughly examine contraband.

The foregoing sufficiently demonstrates the fittingness of these strip searches under the Fourth Amendment. These routine strip searches, which occur only twice per year, require the upheaval of all prisoners and their personal belongings. The prison is entitled to conduct these searches and it sensibly explains that these searches require additional reinforcement. In this case, that meant adding roughly 20 women. ECF No. 109 at 8. Their purpose was to help locate contraband by providing officers with the time, security, and additional manpower to do so. They accomplished their goal.

Plaintiff understandably complains of discomfort from making eye contact with certain female prison guards during the strip search. ECF No. 109 at 8. But this momentary discomfort cannot override the prison's legitimate interest in preventing the flow of contraband and from any incidental eye contact that might arise from it. *see Barnett v. Collins*, 940 F.2d 1530 (5th Cir. 1991) (table, No. 91-1038, unpublished), *cert. denied*, *Barnett v. Collins*, 502 U.S. 1077 (1992) (no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of female guards is required to protect a legitimate government interest such as maintaining security at a correctional facility).

Given the Court's mandate to "accord prison administrators great deference and flexibility . . . including deference to the authorities' determination of the reasonableness of . . . the manner, the place and the justification" for this search, the Court cannot say it gave rise to a constitutional

violation. *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994) (quotation omitted); *see United States v. Lilly*, 576 F.2d 1240, 1244–45 (5th Cir. 1978) (proving reasonableness is a "light burden"); *see also Oliver v. Scott*, 276 F.3d 736, 745–46 (5th Cir. 2014) (explaining that constant surveillance, even cross-sex surveillance, of prisoners is constitutional because it is reasonably related to the penological interest of maintaining security).

## II.     Prison officials had no knowledge of the constitutional search.

A "supervisor may be held liable [under Section 1983] if the supervisor was personally involved in the constitutional deprivation or if there was otherwise a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Brantner v. Freestone Cty. Sheriffs Off.*, No. 20-50528, 2022 WL 2077960, at *4 (5th Cir. June 9, 2022) (quotation omitted).

Assuming *arguendo* that the foregoing did constitute a Fourth Amendment violation, Plaintiff argues that Defendants Seymour, Milburn, and Horsley had knowledge of the search. ECF No. 171 at 6–7. Plaintiff's affidavit states: "I believe this training exercise was approved by Major Matthew Seymour, Assistant Warden Joe Milb[u]rn, and Warden Charles Horsley." ECF No. 162-1 at 2. The FCR reasoned that this assertion is conclusory and thus "not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." ECF No. 170 at 13 (quoting *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)).

Plaintiff argues that his foundation for this assertion is a TDCJ Administrative Directive stating that "[s]trip searches will be used only when directed by specific unit post orders, unit departmental policy, or when a supervisor believes there is reasonable suspicion to warrant such a search." ECF No. 157 at 9. He thus concludes that "a major, an assistant warden, and/or the warden

approved of the strip searches, as these officials in supervisory roles are precisely those who issue unit post orders and create unit departmental policy." ECF No. 171 at 6.

This reasoning is still conclusory because Plaintiff does not explain his basis for the belief that any of *these* Defendants created unit policy or issued orders. They were simply, as Plaintiff has it, the kind of people who might do so. That is a conclusion and not summary judgment evidence. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (stating that unsubstantiated and subjective beliefs, opinions of fact, and conclusions of law are not competent summary judgment evidence); *see also* ECF No. 170 at 17 ("Plaintiff does not demonstrate personal knowledge of this approval, provide a foundation for his belief, or set forth facts that would be otherwise admissible to show the officials' approval of the searches."). There is, in short, no evidence in the record suggesting that any of the above-named Defendants had knowledge of the search. Thus, to the extent the search was unconstitutional — it was constitutional — the above-named Defendants cannot be held liable because Plaintiff marshalled zero summary judgment evidence reflecting that they knew.

### III. Even if they had knowledge, Defendants avoid search liability.

"[F]or the purposes of Fourth Amendment analysis, we review the objective reasonableness of conducting a search, and not the officer's subjective intent." *McCreary v. Richardson*, 738 F.3d 651, 657 (5th Cir. 2013). It is undisputed that Defendant Williams was not present when Plaintiff was strip searched and that Defendant White did not direct the strip search to be conducted in an unlawful manner. ECF No. 163 at 4. Plaintiff responds that, while true, "[t]his highlights the failure of senior officials to responsibly conduct a training exercise." ECF No. 171 at 8.

This causal reasoning is too attenuated to affix liability to Williams or White for an alleged unconstitutional strip search. A supervisor's "knowledge and acquiescence in their subordinates' [violation]" does not "[amount] to the supervisor's violating the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Much less so when Defendants Williams and White lacked requisite knowledge. *See* ECF No. 170 at 14 (recounting Williams testimony that "[t]o the extent any individual female officer or female cadet actively watched a strip search take place, it was neither at my direction nor had my approval"), 15 (recounting White testimony about "never order[ing] nor direct[ing] female officers (including female cadets) to participate in or even to observe the strip searches of male inmates"). The FCR was correct, in short, to conclude that "any causal relationship between Defendant[s'] conduct in bringing female cadets into the room to participate in the shakedown while strip searches of male inmates were occurring and the alleged violation is too tenuous to satisfy the requisite level of personal involvement." *Id.* at 15–16.

### CONCLUSION

Plaintiff raised only three objections to the FCR, which the Court addressed *supra*. After making an independent review of the pleadings, files, and records in this case, this Court concludes that the FCR — including those findings, conclusions, and recommendations not otherwise objected to — is correct. It is therefore **ORDERED** that the findings, conclusions, and recommendation of the Magistrate Judge are **ADOPTED** and Defendants' Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**.

June 5, 2024.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE